Good morning, Your Honors. Melinda Cantrell on behalf of Defendant's Appellants Sgt. Joe Grasso and Deputies Ricky Baker and Darren Iñata. I'd like to reserve two minutes for rebuttal. Defendants respectfully submit they are entitled to qualified immunity from the claims of this case with respect to the First and Fourth Amendment claims brought under Section 1983 and ask that the Court reverse the trial court's order denying their renewed motion for dismissal. Well, now, you already had a trial on part of this, right? That is correct. Okay. And on the probable cause part of it, it went to the jury, right? Right. The jury hung on the unlawful arrest on First Amendment claims. Okay. Now, I'm not quite sure what ñ I think you're making this argument, but you're saying if the jurors couldn't agree whether there was probable cause or not, that's a boost to putting the officer in the position that a reasonable officer could have thought there was probable cause? Is that? Correct. That you didn't have before the trial. We submit that following the trial, the judge should have ruled on qualified immunity and found in favor of the officers, because even if there was no probable cause, a reasonable belief that probable cause existed based on the state of the law. The law was not clearly established that sergeant ñ that the officers could not arrest plaintiffs for violating Penal Code Section 148 based on the undisputed facts of this case in the video of the incident. And that also goes for ñ The most ñ to me, the question about the ñ that seems significant with regard to both the First Amendment and probable cause question is whether he was ñ he appeared to be outside ñ have finally left at the time he was arrested. So does it matter whether ñ I mean, let's assume that ñ there may be other issues, but assuming that he, for example, didn't have a First Amendment right to be expressing himself inside, but why not outside? Similarly, with regard to the probable cause, he could have been obstructing people or interfering with them inside, but once he was outside, what was the problem? Well, once he went over the threshold of the door, he stuck his foot in the door and prevented the door from closing. You can't really see that on the video. So is it ñ that's ñ why is that a disputed fact? Because it doesn't matter. Under clearly established law ñ If it doesn't matter, then it doesn't matter, but ñ Well, I wanted to say twofold. The first is he didn't actually exit and leave. He stuck his foot in the door. But that would be an issue for the jury. But this case is very analogous to the case of N. Ray Muhammad, which was decided in 2002. In that case, just as Your Honor's pointing out, the suspect eventually complied with the orders. However, that did not mean that there was no longer probable cause to arrest him for Section 148. In that case, the suspect was talking to an individual in the backseat of a patrol car. And in that case, the deputies told him five times to step away from the vehicle. In this case, Sergeant Grosso told the plaintiff over ten times, step out of the sheriff's station. In that case, the suspect acknowledged the officers were speaking to him with his hand and defied the orders. Same in this case. Sergeant Grosso ñ or the plaintiff was aware Sergeant Grosso was telling him to step out. He defied the orders. And in fact, at one point he said ñ What part is the section that says ñ the same one we were talking about before that basically says that you have to obey the lawful police law? A person may not resist, obstruct, or delay an officer in the performance of his duties. In N. Ray Muhammad, the suspect eventually walked away from the car. In this case, if the court wants to interpret it that way, the plaintiff, let's say, eventually stepped out of the sheriff's station. How is ñ is there a case law holding that simply not doing something you're told to do is restricting, obstructing, or delaying? Yes. And I think N. Ray Muhammad is an example of that. In that case, they said that while not the most egregious violation of Section 148, a reasonable inference could be made that the officer had to stop what he was doing and deal with the plaintiff when he was trying to perform his duties. What was the duty Sergeant Grasso was performing? Okay, Your Honor. With regard to that issue, we would submit that he was engaged in trying to handle personnel matters within the office and he wanted to meet with a cadet in the sheriff's station. Now, with respect to whether that constitutes an official duty, we are aware of no case law which finds that there cannot be a Section 148 violation simply because the officer is performing a personnel matter, meeting with an employee, or a type of administrative task, in this case meeting with a cadet. In fact, under similar statutes which require that an officer is engaged in the performance of official duties, the test employed is whether the officer is acting in the scope of employment and not engaged in a personal fault. What you have then is a rule, I gather, that is special with regard to police, to law enforcement officers with regard to matters like that. In other words, if you went into my office and did the same thing, it wouldn't be a 148 violation, even if you did exactly the same thing. Well, it might be disturbing the peace in the presence. Right. No, but I'm talking about 148. On your interpretation, it wouldn't be a violation. Well, yes, it could be. Well, not a peace officer, but it would be a violation of 602.1. It could be a violation of 18 U.S.C. 111. And as the Court is aware, if there's poli- All right, so let's leave the fact that I'm a Federal official out of it. Suppose you just went into the office of the, you know, the manager of a Wal-Mart store and started doing the same thing. That could equate to disturbing the peace. I understand, but what disturbs me is that 148, I understand why it's a special rule with respect to law enforcement officers when they're operating as law enforcement officers, but why there should be a special rule for law enforcement officers when they're running their businesses like anybody else, and why you would interpret the statute to mean that is what I'm asking you. Why they just wouldn't be relegated to whatever other rule would otherwise apply. The Ninth Circuit reached a similar finding in the case United States v. Ryberg. In that case, there's a similar statute which makes it a crime to interfere or abstract forest rangers in the performance of their duties of protecting the national forest. In that case, the rangers went and went on a private property to deliver news of the death of a relative to an individual. The suspect on appeal claimed that the forest rangers weren't performing their official forest ranger duties because they weren't protecting the forest. The Ninth Circuit said that the administrative deployment of these rangers could not be said to be outside of the scope of their official duties, and therefore their arrest was valid. In this case, similar findings that... Is there any California case suggesting that? No, and that's exactly the point. The law is not clearly established that the conduct Sergeant Grasso was engaged in could not amount to a violation of Penal Code Section 148, I'm not aware of any cases establishing that. So, as a matter of law, defendants respectfully submit that he would be entitled to qualifying immunity on the Fourth Amendment claims, as the law is not clearly established that an officer can't be performing his tasks within the sheriff's station within the meaning of that statute. Because there was probable cause or reasonable belief that probable cause existed for that arrest, the plaintiff's First Amendment claim also must fail as a matter of law because Sergeant Grasso would be entitled to qualifying immunity. Skoog v. County of Clackamas was decided after this incident. I'm sorry, what was? Skoog v. County of Clackamas was decided after this incident. And in that case, the Court held for the first time that there need not be probable cause to support a First Amendment retaliatory search claim. So, but in that case, the officer was entitled to qualify immunity because the Ninth Circuit had never held that before. However, in Beck v. Upland, the Ninth Circuit said that the plaintiff must still show lack of probable cause to pursue a malicious prosecution or unlawful arrest claim. So I still think it's the law of the circuit that the plaintiff must show lack of probable cause. What was that? I'm sorry. I didn't hear you. The last case. Beck v. City of Upland. I know that one. Also, with respect to the First Amendment claims, it's not clearly established that Mr. Dirks was engaged in protective activity. The record shows that he's not going to the sheriff's station to complain of a grievance or file a grievance against him. On that issue, well, this is a different point, but because you're now arguing I don't understand this argument because he was an employee and those cases were all employee cases, conning and so on. But leaving that aside, the other argument is that he didn't have any right to express himself as he did inside the police station. Correct. And that's why I observed earlier that he was actually, or at least arguably, arrested when he was outside. Well, again, under Inmari Muhammad, it doesn't matter that he eventually stepped outside because he defied orders. No, but for this purpose, for First Amendment purposes. For First Amendment purposes, putting aside any public employee speech issue, there still must be engaged in a protective activity to have a First Amendment violation. Even if he was engaged in First Amendment speech, which I don't think, I think the record fairly shows that he was only attempting to stop the meeting. But even assuming he was, the law is not clearly established that he could engage in this type of activity in a sheriff's station. Well, you're saying that the officers couldn't have known whether it was a public or a semi-public or what type of form it was based on the First Amendment jurisprudence? That is exactly correct, Your Honor. I didn't ask you that question, though. I asked you whether once he stepped outside, why that point disappears. Well, his First Amendment speech? Yes. He wasn't actually arrested until he stepped outside. Well, I believe the undisputed record shows that he was arrested because they couldn't close the door. But even if he could have validly been arrested, even if he ultimately complies under the state of the law in Reign Muhammad and probable cause for the Fourth Amendment. But it seemed pretty plain that he was being arrested at that point for what he was doing at that point. That's why they all of a sudden said, hook him, or whatever they said. I think a reasonable officer could believe that under the circumstances of the entire incident, there was probable cause to arrest him for 148. Leaving aside, what I'm talking about now is not that. I'm talking about the First Amendment argument. Yes. That at the point he was actually arrested, it would seem to me that viewing the evidence favorably to the plaintiff, that he was not inside the sheriff's office anymore. I think that would be a fine distinction to make when he's standing in the sheriff's office doorway. And other circuits that have decided the issue say that while a sheriff's station is public, the public has the right to enter the lobby. That doesn't mean that they're not nonpublic forums. So I think that the law is not clearly established to a reasonable officer in Sergeant Grasso's position that standing at the doorway and engaging in the type of conduct exhibited by Mr. Dirks would automatically take him out of the realm of the First Amendment. What were the jury instructions in the first file on this? What were the jury instructions? Specifically as to probable cause. I'm not aware. I would have to consult the record on that with regard to the specific jury instructions. Isn't that relevant to know? I mean, in order to know whether he has a viable claim, you'd have to know at least what the district court thought the law was and then see whether that was right or wrong, no? Well, the district court said that he would be entitled to qualified immunity under Skoog if we established probable cause for arrest. And the district court said that there's a First Amendment in the renewed motion for judgment, that there's a First Amendment right to file grievances regarding police misconduct, which we agree, but that's not the issue here. But I guess what you're saying, what was the jury deciding on that issue? Because when it went to the jury, they hung up on probable cause, right? Right. But what were they told they were supposed to look at? I believe the special verdict just said where the plaintiff's First Amendment rights violated, and they hung. But they must have had jury instructions. That's correct. Do you have those in the record at this point? I assume they're accessible. They are in the reporter's transcript. I don't believe that they were in the excerpts of record. But we would submit that the officers are entitled to qualified immunity under the state of the law, regardless of the jury's findings, because the law was not clearly established that a reasonable officer in Sergeant Grasso's position would have known that the plaintiff was. Did the qualified immunity issue, was it put to the jury? My understanding is, no. The factual, the First Amendment violations were put to the jury, and then in a motion for judgment, in a renewed motion for judgment, the defendants submitted they were entitled to qualified immunity as a matter of law.  Thank you very much for your recognition. I have a question. This is a factual question. I understand that Grasso said there is no meeting. Is that true? Did he say that? I'm sorry. I didn't understand your question. Grasso said more than once there is no meeting. Is that correct? He did say that in the course. I mean, the purpose that she was called in for was to have a meeting. Actually, the minute she walked in, the police, the sheriff said, Deputy said you're terminated. That sounded like that was the meeting. Right. I mean, but I would submit that regardless of if he said you're terminated, regardless if there was a meeting, what he was trying to do is take care of a personnel matter within the sheriff's station. Wait a minute. I want to get the facts straight. Grasso says there is no meeting. So what is the meeting that is being interrupted? Well, I think initially the cadet was called down to meet Restart and Grasso, and he wanted to speak with her directly. No, but he says there is no meeting. I think during the course. What's that? I think during the course of after the cadet arrived with Mr. Dirks, at some point he did say there is no meeting because he just wanted. He says it more than once, doesn't he? Right, because he wants Mr. Dirks to step out and he doesn't want to. Well, anyway, he says there is no meeting. So what is Dirks interrupting? Well, I think the facts fairly show that the cadet was called to speak to Sergeant Grasso, and he wanted to either terminate her, have a meeting with her, or handle some business with regard to her. Well, either he's meeting her or he isn't. He tells Dirks there is no meeting. And I think that happened once that cadet arrived with Mr. Dirks. More than once. More than once. But I think the record is clear. He's not engaged in a personal folic. He's trying to handle his duties in the sheriff's station and dealing with this cadet. I'm sorry? He is not having a meeting. He says I'm not having a meeting. So what is he doing? What is his duty? Is he just wants the place clear? Didn't Mr. Dirks or Professor Dirks come in and want a continuance? He mentioned something along those matters. But defendants would respectfully submit whether there was a continuance of the meeting, whether he was going to meet with her, whether he was going to fire her. None of these things are relevant for the purposes of establishing qualified immunity because the law is not clearly established that Sergeant Grasso had to be doing an official law enforcement task for 148 to apply. Rather, the law is the opposite. And I think the law is sufficiently clear that he was not engaged in a personal folic. He's trying to take care of him. It seems to me, I think I understand your argument. Your best argument is there was clearly a hoo-rah-rah that was going on in this office. Correct. And you have, you know, whether it would be my office or someone else's, you have, you know, the people are all in a dispute and Sergeant Grasso is trying to do one thing. Professor Dirks wants to interject himself or get a continuance. You've got the cadet hoo-hooing and, you know, you've got a lot of noise and all of this. And Sergeant Grasso doesn't want that going on in his lobby. And so what you're saying is it wasn't clearly established that he couldn't tell someone, get out of my lobby and stop causing this disturbance. That's exactly correct. And in Illinois v. D. Rossett, the court found that while an individual can go to the sheriff's station and lodge a grievance regarding police misconduct, that individual does not have the right to engage in a one-man demonstration, which interrupts the internal workings of the sheriff's station, which is exactly what happened in this case. But you would essentially say even if he was going to have a meeting, he was going to be doing something that had to do with his business. Right. He's conducting his business in the sheriff's station and in dealing with this cadet. Okay. Thank you very much. You're way over your time. Cancel. We'll give you five extra minutes because she took eight extra minutes. Thank you, Your Honor. But in your defense, we're taking all the time. So it's your hair to answer our questions. May it please the Court, Saul Reese on behalf of Professor Charles Dirks. Can you kind of pick up where I left off in the sense that you clearly have, you know, I'm trying to figure out what happens when there's, you know, in your lobby, there's a situation going on that, you know, let's give it, you know, how does that end? You know, how do you bring that to an end in terms of that, you know, and in terms of do you have to let someone continue to cause a scene in your lobby? Let me first address that. It would be great if this never happened. We would love that. But it did. What the Court said about the jury. Nobody knows why the jury hung. It's not that they hung on probable cause. Nobody knows. They just hung. Well, they did. They reached a verdict on part of it. They didn't find it. They only reached a verdict with respect to Enana and Baker, that they had not used excessive force. Okay. End of story. Okay. The rest of it, there is no verdict. There's a hung jury. But let me address what the Court said because this case bothers me tremendously. It just seems that there should be a way to bring something like that to an end, and if it won't. I want to go back to how it started because we all learned the first year of law school about one aspect of how we conduct ourselves, and that is you can't set a trap gun and claim that because you managed to kill somebody who needed killing that the trap gun was okay. And the reason I say that is this was, from minute one, a trap gun. Here's the evidence. Okay. On both sides. Well, no, on one side. Here's the evidence. The evidence is Sergeant Grasso observes Yesenia Franco arrive at the campus and walk past his office going someplace else. That's all he knows. He then sets up a human trap gun. He deploys Enana. He deploys Baker. He deploys a videographer. The only business of that sheriff's office at that moment in time and from then on until the end of this incident is to arrest whoever walks in with Yesenia Franco. Now, what's troublesome from a First Amendment point of view and this claim that the law was not clearly established, these people are there not only by his invitation. They are there by his direct order. That's the uncontroverted evidence. Yesenia Franco. I'm not understanding that. She was, but why was he? Because she is brought in there and at this point she is ordered there improperly, by the way, by someone who's not her employer to threaten her employment. And she brings with her a grievance advocate on an employment issue. She had every right to do it, but that person wasn't ready to come. That's a different point. But he's there. He's there, but you're going to draw him. But when they enter, okay, forget about what happens afterwards for a minute. He has a constitutional right to be there and he expresses. Well, why does he have a constitutional right to be there? Because as I think that Judge Fees pointed this out, the law is clearly established that the place to enter complaints about what police do is in the lobby of the police station. And, in fact, there's a. . . But he's. . . One second. And all he says is, I'm here, I'd like to not have this meeting. And now this brouhaha is all commenced and prosecuted by Grasso because the very first words that Grasso speaks within two seconds are, I'm going to have to ask you guys to leave. And the question, to address it directly, Your Honor, is what should have happened? Well, I guess there ought to be adults in the room. And the senior. . . I'm sorry? Adults in the room. But your client wasn't going to. . . And the senior. . . But if your client had walked out, that would have ended it too. So, you know, there's. . . If my client had walked out, then this personal frolic. . . And, by the way, I want the Court to have some attention to certain facts. Sergeant Grasso says a couple of things, and this is where this is a pure speech case. Nothing happens while they're in the office. Sergeant Grasso continues to be an active participant, engaging in factual discussions. In other words, discussions on the merits about what's going to happen to Franco. Well, what should Sergeant Grasso have done? Should he have gone and locked himself in another room, or what should he have done? If you don't want someone yelling at you, what should you do in that situation? In this case, he should have said, well, then there will be no meeting, and he should have turned around and went back to his office, and that would have been the end of it. But what he continued to do was maintain the fact that unless someone stopped him in some way by standing there and engaging him in conversation, he intended to do something he couldn't do, which was fire Yesenia Franco. In fact, on multiple occasions, as Judge Noonan has pointed out, he says, there is no meeting. She's terminated, which he has no right to do. But I want the Court to focus on something other than the first amendment issue, if I might. I mean, I have – it's a good idea to listen to judges' questions. Okay. I would – you've naturally distracted me, but I wanted to ask – oh, yes. Let's assume that we don't want to – that this whole question of what went on inside is problematic. But I thought, and I guess I'd like your comment, is it your view that he did, in fact, leave or was in the process of leaving at the time that he was actually arrested? He was outside the door, and I can tell you why he was arrested, because in the record, he is engaged in a discussion on the merits with Grasso. And Grasso says, look, she's fired. I cleared this with Ramirez. Now, Dirks is standing outside. They're having a substantive discussion on the issue, and he says, I cleared this with Ramirez, who is a political opponent of Franco and her group of students. He is a student. Why isn't that your best argument, that at least after the First Amendment part of it – And here's what he says. Excuse me one minute. I'm sorry. At least as to the First Amendment part of it, the actual – he was arrested, went in the course of engaging in speech activity on a matter of public importance, not inside the sheriff's office, but outside in a public area. And it's true. And that is the best argument. And the next statement, Your Honor, is what causes his arrest. He says, so it was a setup. And that's on the tape. And that is what makes him in contempt of COP a violation of 148, according to Sergeant Grasso. And he says, hook him up. It is immediately following an exchange of words in which Grasso says, I cleared my actions with Ramirez. And Dirks replies from outside the sheriff's station, so this was a setup. And then he is immediately arrested. This is all about retaliation for that piece of speech. Because nothing, Your Honor, Judge Callahan, nothing that happened within the sheriff's station appeared to have motivated an arrest. None of this alleged fantasy interference with anything that wasn't totally planned in advance appeared to motivate the arrest. The only thing that happens to cause the arrest is this exchange of words. I cleared it with Ramirez. That was a setup. Now let's get into a technical problem. I do think that the Beck case reflects the Supreme Court case, whose name I'm now forgetting, which recently held that in order to set up a First Amendment retaliation case, which this would be, in other words, it would be that the reason why they were charging me with 148 is because I was speaking, that in order to do that, you need to prove that there wasn't probable cause on the arrest. And they seem disconnected. I understand that. But that does seem to be what the law is at this point. Is that your understanding? I'm not following what the Court just said. I apologize. It's your First Amendment cause of action that it was a retaliatory arrest, essentially. It's two things. The First Amendment cause of action is that he was deprived of his First Amendment rights ab initio when he is walked into a place where he is essentially invited to express an objection to what is about to be described as police conduct. And from that point forward, everything that happens is motivated. This is what the appellants say, that once the ‑‑ it's this bizarre concept that I can invite you into my office, and then when I don't like what you say, if I'm a sheriff, I can begin ordering you out. And if you don't go, I can arrest you. But why isn't that just a bare trespass? I mean, there's a trespass statute, too. And it essentially says if you're asked to leave a private property and you don't leave, you could be arrested. Because this is a public place. Or a public place, either. There's a public statute, too. They don't arrest them for that. The interesting thing is they don't. They don't ever arrest them. No, no. I think I had a question. Oh, no. Yeah? No. This entire kerfuffle that goes on here is orchestrated by Sergeant Grasso and is terminated by Sergeant Grasso after it should already have been over. When he ‑‑ I guess I'm not seeing that this was ‑‑ I don't think Sergeant Grasso was expecting the professor. Sure he was. He was because he testifies that the purpose of deploying all this personnel was because he didn't think that Yesenia Franco was coming back alone. Because he certainly didn't need this army for a 19‑year‑old girl. I have to say something. I apologize to the court. But I'm a father. If someone was going to do that to my kid, whether he's a deputy sheriff of L.A. County or not, I wouldn't have acted or expected any father to act any differently than Dirks did. And if that's a crime, then there's something wrong with it. And that's well established. Sergeant Grasso was not under any misapprehension whatsoever that he was there to abuse this woman. Because he couldn't fire her. He testified under oath, Your Honors, that he had called for this mystery HR guy whose name he didn't know who was supposedly going to show up and do this termination. All he had to have said was, the HR guy is coming. Can you guys please wait outside? But he doesn't say that. He lies. He says, no, I'm going to fire you. In fact, you ought to fire me. What he actually says the minute she walks in is, she's terminated. Right. And then he comes back later and he testifies that he had arranged for some HR guy who he could never identify, who never showed up, who nobody ever heard of, to show up and do it. This isn't qualified immunity. This is a guy who knows what he's doing. He invites someone and he's going to abuse them. And he expects if anybody shows up there to help him, he's going to videotape them and arrest them. There's no doubt about what was going to happen. This was a trap gun. Somebody was going to get arrested that day unless Sergeant Grasso got to do what he wanted to do, which was abuse Yesenia Franco. It's as simple as that. Okay. Thank you. Thank you. Thank you very much. I think you went way over your time. The case of Dirks v. Grasso is submitted and we are in recess for the day. Thank you very much. What's that? This court is adjourned. Thank you. All right, I'll see you. Thank you.
judges: Noonan, Berzon, Callahan